**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Chamber of Commerce of the United States of America**, 1615 H Street, NW Washington, DC 20062 *Plaintiff*, v. **Federal Trade Commission**, 600 Pennsylvania Avenue, NW Washington, DC 20580 *Defendant*. | Case No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     Plaintiff Chamber of Commerce of the United States of America (Chamber) brings this action against Defendant Federal Trade Commission (Commission) to compel compliance with the Freedom of Information Act (FOIA), 5 U.S.C. §552, and to obtain records in response to four of its FOIA requests that the Commission is unlawfully withholding.

**INTRODUCTION**

2.     In the last two years, the Commission has embarked on a series of unlawful and self-aggrandizing actions—often in secret. The Chamber has been trying since last year to obtain public records relating to the Commission's actions, yet has been rebuffed on several of its key requests.

3.     *First*, the Commission has unlawfully withheld documents about its practice of counting "zombie" votes of former Commissioners who have already left office. Public reports in late 2021 revealed at least 20 instances in which the votes of departed Commissioner Rohit Chopra were counted even after he had left the Commission. Yet the Commission has withheld records

about Commissioner Chopra's zombie votes on the dubious ground that they would be too "burdensome" to produce, and the Commission has located responsive records about the Commission's general practice of counting the zombie votes but continues to unlawfully withhold those records.

4.      *Second*, the Chamber has sought records about the Commission's communications with foreign jurisdictions with regard to a merger between two American biotechnology companies. There was little reason for international coordination among separate jurisdictions without the parties' agreement in that matter, as the analysis of any potential impact from the merger was and is different in the United States than in foreign jurisdictions, such as the European Commission (EC). The Commission initially sought an injunction in federal district court against the transaction, where some speculated that the Commission would have faced long odds in successfully challenging the transaction. It did an about-face, abandoning its efforts to secure an injunction, and instead pursued an internal administrative proceeding against the transaction. Dismissal of an already filed motion for an injunction in this context is virtually unheard of. In the meanwhile, the Commission appears to have relied upon the EC's late, and also questionable, challenge of the transaction as part of a seemingly coordinated procedural strategy to kill the deal. With the transaction under review in Europe, and tied up in an administrative proceeding in the United States, the Commission evidently thought it would be able to run out the clock on the deal without it having to successfully challenge the transaction on the merits. The Commission now refuses to provide documents about its communications with foreign jurisdictions on the grounds that the EC was somehow a "consultant" to the Commission, an erroneous conclusion under FOIA that is particularly inapplicable in the context of this antitrust matter

5.      *Third*, the Chamber has sought records about the current Commission Chair's prior employment at the Commission through a short-lived, novel "Legal Fellow" position. The Commission has provided no substantive response. It has effectively ignored the FOIA request, and thereby avoided, thus far, providing an explanation of the legal authority for and employment status in support of the "Legal Fellow" position.

6.      In short, the Commission has adamantly refused to provide documents about critical issues of how it operates and makes decisions. This Court's intervention is needed to ensure that the Commission's actions are transparent and accountable to the public as it pursues an aggressive agenda with far-reaching implications for the American economy.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §§1331, 2201(a), 2202.

8.      Venue is proper in this district. 5 U.S.C. §552(a)(4)(B); 28 U.S.C. §1391(e)(1).

## PARTIES

9.      Plaintiff Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members before Congress, the Executive Branch, and the courts.

10.      Defendant Federal Trade Commission is an "agency" of the federal government within the meaning of 5 U.S.C. §552(f)(1). The Commission is in possession, custody, and control of the records responsive to Chamber's requests.

## STATUTORY FRAMEWORK

11.     FOIA is one of the most effective resources available to the public and regulated entities to shed light on agencies' actions and hold them accountable for their decisions. The purpose of FOIA is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Elkins v. FAA*, 65 F. Supp. 3d 194, 199 (D.D.C. 2014) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). And FOIA serves to "ensure an informed citizenry, vital to the function of a democratic society." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Robust enforcement of FOIA is "needed" to "hold the governors accountable to the governed." *Id.*

12.     Under FOIA, federal agencies must release requested records to the public unless one or more specific statutory exemptions apply. 5 U.S.C. §552(a)(3).

13.     "FOIA mandates 'a strong presumption in favor of disclosure.'" *Elkins*, 65 F. Supp. 3d at 199-200 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).

14.     FOIA also requires an agency to respond "within 20 [working] days . . . after the receipt of any such request," notifying the requester of the agency's "determination" whether or not to comply with the request, the reasons therefor, and the right to appeal any adverse determination to the head of the agency. 5 U.S.C. §552(a)(6)(A)(i).

15.     This 20-working-day requirement mandates "more than just an initial statement that the agency will generally comply with a request and will produce non-exempt documents and claim exemptions in the future." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013). Rather, the agency must at least "gather and review the documents" and then specifically "determine and communicate the scope of the documents it intends to produce and withhold." *Id.*

16.     Although FOIA provides that under "unusual circumstances," an agency may request an additional 10 days to make a determination, the agency must do so by "timely written notice" that "set[s] forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. §552(a)(4)(A)(viii)(II)(aa), (a)(6)(B)(i).

17.     When a requester appeals the denial of his requests, the agency must respond to the requester's appeal within 20 working days. *Id.* §556(a)(6)(A).

18.     Courts have jurisdiction to "order the production of any agency records improperly withheld from the complainant." *Id.* §552(a)(4)(B). Ordinarily, a FOIA requester must exhaust administrative appeal prior to seeking judicial remedy. However, the requester is "deemed to have exhausted administrative remedies" if the agency violates the 20-day time limit. *Id.* §552(a)(6)(C)(i).

19.     FOIA also allows the court to assess "reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." *Id.* §552(a)(4)(E).

## FACTUAL ALLEGATIONS

20.     The Commission exercises sweeping power over the American economy, with more than 70 federal statutes under its purview that often employ nebulous concepts like "[u]nfair methods of competition." 15 U.S.C. §45(a)(1).

21.     There is very little structural check on the Commission. The Commission is not directly accountable to the people, and the Commissioners do not stand for re-election. And recently, the Commission has taken the extraordinary position that it is insulated from almost all judicial scrutiny and that the only recourse for regulated entities is the highly deferential appeal

process after enduring years of costly administrative proceedings before the Commission's in-house tribunals. *See* FTC.BIO 3, 8-9, *Axon Enter., Inc. v. FTC*, No. 21-86 (U.S. Sept. 22, 2021).[1]

22.     Deeply concerned about the direction the Commission had steered itself under new leadership, starting last year, the Chamber requested the release of public records pertaining to several important aspects of the Commission's operation. But the Commission continues to resist transparency and disclosure. While the Chamber submitted more than 30 FOIA requests, the Commission stonewalled nearly all of them.

23.     For the purposes of this suit, four of the Chamber's requests are at issue: (1) "Chopra Zombie Vote Request" (FOIA Request No. 2022-00323) (Ex. A); (2) "Past Zombie Votes Request" (FOIA Request No. 2022-00324) (Ex. B); (3) "Illumina-GRAIL Request" (FOIA Request No. 2022-00588) (Ex. C); and (4) "Khan's Prior Employment Request." (FOIA Request No. 2022-00589) (Ex. D).

24.     To date, the Commission has unlawfully withheld the requested public records, either through erroneous invocation of FOIA exemptions or months of delay and failure to act.

### *Chopra Zombie Votes Request*

25.     By statute, the Commission has five seats and—as a multi-member agency—ordinarily requires a simple majority vote to approve an action. On October 8, 2021, when Commissioner Rohit Chopra resigned and left the Commission to head the Consumer Financial Protection Bureau, the Commission was seemingly left with four Commissioners and prone to a potential 2-2 deadlock.

---

[1] The Supreme Court granted certiorari to decide what judicial recourse is available for the regulated entities against the Commission. *See* 142 S. Ct. 895 (2022).

26.     But the Commission found another way. It decided to count the "zombie vote[s]" cast weeks ago by the sitting Director of the Consumer Financial Protection Bureau" to break the deadlock. Dissenting Statement of Comm'rs Wilson & Phillips, at 1, *Regarding the Statement of the Commission on Use of Prior Approval Provisions in Mergers Orders* (Oct. 29, 2021), https://bit.ly/3wFI0jI. According to a Politico report, the Commission relied on at least 20 such zombie votes cast by former Commissioner Chopra. Leah Nylen, *'Zombies' to the rescue: The arcane voting rule that could save Dems' antitrust agenda*, Politico (Nov. 8, 2021), https://politi.co/37ZCDDJ. Never mind that the text of the Federal Trade Commission Act clearly assumes the basic notion that all votes would be cast by the Commissioners "in office." 15 U.S.C. §41. Never mind that the Commission's own regulations expressly state the same. 16 C.F.R. §4.14(b), (c). And never mind that the Supreme Court recently issued an admonishment that federal courts should not count the votes of deceased judges, with reasoning that applies with equal force to the Commission. *Yovino v. Rizo*, 139 S. Ct. 706, 709-10 (2019).

27.     Equally troubling were the Commission's efforts to conceal its procedural irregularities. According to Politico, "the agency considers" the procedural rules governing zombie votes "confidential." Nylen, Politico, *supra*.

28.     On December 2, 2021, the Chamber submitted its "Chopra Zombie Votes" Request, seeking disclosure of public records relating to the Commission's practice of counting the votes of former Commissioner Chopra. Ex. A, at 1-2.

29.     The Chamber's request was specific and sought a clear and well-defined universe of documents over a narrow time period: "All records related to votes cast by Former Commissioner Rohit Chopra between September 30, 2021 and October 8, 2021." Ex. A, at 1.

30.     To clarify the nature and scope of the request, the Chamber provided the following explanation:

> This includes, but is not limited to, the specific votes he purported to take that have yet to be made public or might never be made public as of the date of this request; records related to any matter that was not publicly announced by the FTC prior to December 2, 2021; matters that were not yet voted on by all other Commissioners before October 8, 2021 but were voted on by Former Commissioner Chopra; legal analysis performed or received by the FTC; communications between the FTC and the White House; as well as press statements or drafts of press statements. The timeframe for the Chamber's request is July 1, 2021 to the present. For purposes of this FOIA request, we seek as a priority and initial matter documents reflecting the subject matter and dates of votes that Former Commissioner Chopra purported to take between September 30, 2021 and October 8, 2021 on any or all matters that had not been voted on by all other Commissioners before October 8, 2021, with additional records subject to this request provided on a rolling basis thereafter. Ex. A, at 1.

31.     Despite this clear-cut and specific request, the Commission's FOIA unit concluded that it did not need to comply with the request because, in its view, the request was unreasonably burdensome. Ex. A, at 3-4. The FOIA unit issued a summary denial with no meaningful explanation.

32.     The Chamber timely appealed the adverse determination to the Commission's General Counsel. Ex A, at 5-8. On January 22, 2022, the General Counsel's Office issued its appeal decision, agreeing with the FOIA unit that the request was too broad. Ex. A, at 9-13.

***Past Zombie Votes Request***

33.     Relatedly, on December 2, 2021, the Chamber also submitted a separate FOIA request to unearth the Commission's practice of counting the zombie votes *generally*, not limited to Commissioner Chopra's zombie votes. Ex. B, at 1. The Chamber sought "[a]ll records related to counting votes of Former Commissioners for a period of time after their departure from the Commission." Ex. B, at 1.

34.     Despite the discrete and clear-cut request, the Commission's FOIA unit initially concluded that the Chamber's request was unduly burdensome and denied the request. Ex. B, 3-4.

35.     The Chamber timely appealed the adverse decision to the Commission's General Counsel's Office. Ex. B, at 5-8. The Commission's General Counsel's Office agreed with the Chamber that the blanket assertion of undue burden was erroneous and remanded to perform the necessary searches to find the records responsive to the Chamber's request. Ex. B, at 9-10.

36.     On remand, on March 18, 2022, the Commission's FOIA unit stated that it located 564 pages of responsive records. Ex. B, at 12. It produced only 72 pages or records, which included a handful of media reports, Congressional letters, and the Chamber's appeal. *See* Ex. B, at 12. The FOIA unit withheld the rest, claiming Exemption 5 (deliberative-process privilege, attorney-client privilege, and attorney work-product doctrine) and Exemption 7(A) (law enforcement activities). Ex. B, at 12-13.

37.     The Chamber, again, timely appealed the adverse determination to the Commission's General Counsel's Office. Ex. B, at 14-17. On June 22, 2022, the General Counsel's Office affirmed the FOIA unit's adverse decision. Ex. B, at 18-21. The General Counsel's Office asserted that she found "that the FOIA Unit properly invoked the deliberative process privilege and the attorney work-product privilege." Ex. B, at 20. The General Counsel's Office, however, did not appear to uphold the FOIA unit on attorney-client privilege grounds. Ex. B, at 20.

38.     Moreover, the General Counsel's Office upheld the FOIA unit's determination regarding Exemption 7(A), asserting that the Commission did "not have a duty to justify its FOIA request withholding decision on a document-by-document basis at this stage." Ex. B, at 20. The General Counsel's Office also sided with the FOIA unit's conclusion that the records were not segregable. Ex. B, at 20.

*Illumina-GRAIL Request*

39.     The Chamber has also become aware of situations in which the Commission may have relied upon a foreign government authority to collaborate to strong-arm American corporations into dropping a planned transaction. For instance, in 2016, Illumina, Inc.—a leading maker of gene-sequencing machines—formed GRAIL, Inc. to develop a blood test to screen for cancers in asymptomatic individuals. A few years later, Illumina sought to reacquire GRAIL, believing that doing so would allow the combined company to expedite the production, distribution, and navigation of regulatory and reimbursement processes for GRAIL's blood tests.

40.     The Commission has said that "vertical mergers" like this—coming together of two companies at different points of supply chains, with Illumina producing the gene-sequencing platforms and GRAIL producing the blood tests—help consumers, which is the whole point of antitrust laws. DOJ & FTC, *Vertical Merger Guidelines* 2 (June 30, 2020), https://bit.ly/3kYKswh.

41.     Nevertheless, the Commission brought suit to block the merger on the novel theory that Illumina *might* someday charge GRAIL's hypothetical future competitors more for the gene-sequencing products used in the blood tests. This was despite the fact that the Commission itself views vertical mergers to be generally beneficial to consumers; there are *no* market participants for multi-cancer early detection tests other than GRAIL, either now or on the horizon; and Illumina contractually committed to continue supplying its products and to keep the prices low for GRAIL's alleged competitors, if they emerge, for 12 years.

42.     Perhaps sensing the weakness in its legal theory under *U.S.* antitrust laws, the Commission appears to have spoken to the European Commission (EC) about reviewing the proposed Illumina-GRAIL merger under the same legal theory under European law (notwithstanding GRAIL's lack of business activities in Europe). The Commission subsequently

dismissed its pending federal-court lawsuit, pursued a highly unusual administrative trial, and relied upon the EC's merger review to keep the transaction from going forward in an apparent effort to run out the clock on the deal and avoid having to challenge the transaction on the merits, in court, under U.S law.

43.     On February 4, 2022, the Chamber submitted its "Illumina-GRAIL" Request. Ex. C, at 1-2. Specifically, the Chamber requested: "All records related to communications between the FTC and the European Commission or other foreign jurisdictions regarding the Illumina-Grail transaction." Ex. C, at 1.

44.     And to aid the Commission's document search, the Chamber even provided the following detailed explanation:

> This request includes, but is not limited to, all such communications between or among the FTC and the European Commission or other non-U.S. agencies or authorities; communications between the FTC and members of the Biden transition team; and any press statements or drafts of press statements. The timeframe for the Chamber's request is November 23, 2020 (the start of the presidential transition period) to the present. The term "records" as used in this request includes emails, handwritten or typed notes, phone calls, meeting minutes, meeting agendas, calendar entries, electronic chats, instant messages, encrypted or self-destructing messages, messages sent via Facebook messenger, text messages, voice messages, and any other electronic or hard copy records stored on official or personal devices or in official or personal accounts. Ex. C, at 1.

45.     On April 14, 2022, the Commission's FOIA unit stated that it located 2,582 pages of responsive records. Ex. C, at 3 It determined that it would produce 1,009 pages of an already public transcript of its proceeding against the merging parties that was not germane to the Commission communications with foreign agencies, while withholding the rest. Ex. C, at 3. The FOIA unit asserted that the withheld documents were exempt under the deliberative-process privilege and the "consultant corollary doctrine." Ex. C, at 3. However, the European Commission is not a federal "agency" under the meaning of the FOIA's text. Furthermore, the existence of the

consultant corollary doctrine is legally questionable and, at best, shields only outside consultants who are functional equivalents of agency employees, and would not apply in this context of two separate and distinct antitrust authorities purportedly exercising their unrelated powers, responsibilities, and abilities to investigate this transaction. Nevertheless, the FOIA unit concluded that the European Commission was a "qualifying third part[y]." Ex. C, at 3.

46.     On April 19, 2022, the Chamber timely appealed the invocation of Exemption 5. Ex. C, at 6-12.

47.     On May 17, 2022, the General Counsel's Office issued an appeals decision agreeing with the FOIA unit that the responsive records were exempt from disclosure. Ex. C, at 15. The General Counsel's Office found "that a consultant relationship exists between the FTC and foreign jurisdictions in the responsive records." Ex. C, at 15. And the General Counsel's Office concluded that none of the 1,009 pages of the records were reasonably segregable.

### *Khan's Prior Employment Request*

48.     Back in 2018, then-Commissioner Chopra decided to hire now-Chair Lina M. Khan as a "Legal Fellow" in his office. The position of "Legal Fellow" is highly unusual and not a typical title used in relationship to staff positions in support of a commissioner.

49.     The Commission has been non-responsive about the details of the "Legal Fellow" position and has not "respond[ed] to a request for details on [Khan's] role" when asked by reporters.  Nancy Scola, *FTC Democrat hire tech industry critic who's taken aim at Amazon*, Politico (July 9, 2018), https://politi.co/3sIhxkz.

50.     On February 4, 2022, the Chamber submitted its "Khan's Prior Employment" Request. Ex. D, at 1. The Chamber requested:

> All records related to the status of, and the authorization and approval for, FTC Chair Lina Khan's previous employment as a "Legal Fellow" by or at the FTC,

before her tenure as Chair; and all records regarding the creation, authorization, and funding of a "legal fellow" program within Commissioner offices at the FTC. Ex. D, at 1.

51.    Under FOIA's 20-working-day requirement, the Commission's determination or request for an extension was due on March 4, 2022.

52.    On March 9, 2022, the Commission's FOIA unit purportedly requested an extension based on "unusual circumstances" under 5 U.S.C. §552(a)(6)(B)(iii). The FOIA unit asserted that the Chamber's "request requires the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records." Ex. D, at 3. An extension request must "set forth … the date on which a determination is expected to be dispatched," 5 U.S.C. §552(a)(6)(B)(i), but the extension request of March 9, 2022, contained no expected date for the determination. *See Gatore v. United States Dept. of Homeland Sec.*, 177 F. Supp. 3d 46, 54 (D.D.C. 2016) (holding ineffective an extension request that invoked "unusual circumstances" without providing an expected determination date).

53.    On March 11, 2022, a representative of the Chamber emailed the FOIA officer, noting the "surprise" as "the request as originally drafted is more narrow than how it is being interpreted." Ex. D, at 5. On the same day, in response, the FOIA officer noted that he "mistakenly cited the amount of records as the unusual circumstance for extending the request, when actually [he was] still searching for and gathering any possible responsive records from different FTC offices." Ex. D, at 4. That response from the FOIA officer likewise did not "set forth … the date on which a determination is expected to be dispatched." 5 U.S.C. §552(a)(6)(B)(i).

54.    To date, the Commission has failed to make determination regarding the Chamber's Khan's Prior Employment Request.

## CLAIMS FOR RELIEF

### COUNT I
### Failure to Comply with FOIA
### (Chopra Zombie Votes Request)
### 5 U.S.C. §552

55.     The Chamber repeats and re-alleges the allegations in the foregoing paragraphs as if set forth fully herein.

56.     The Chamber properly submitted the Chopra Zombie Votes Request and sought the release of the records within the possession, custody, and control of the Commission.

57.     Under 5 U.S.C. §552(a)(3)(A), the Commission was required to promptly produce all responsive records that are subject to disclosure under FOIA. Nevertheless, the Commission erroneously concluded that the Chamber's requests were too burdensome.

58.     FOIA imposes a very heavy burden on agencies that seek to deny a FOIA request on the ground that it is too burdensome to answer. *See, e.g.*, *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275; *Tereschuck v. Bureau of Prisons*, 67 F. Supp. 3d 441, 455-56 (D.D.C. 2014).

59.     The Commission failed to produce and wrongfully withheld the records responsive to the Chamber's FOIA requests. The Chamber's request was not unduly burdensome; to the contrary, it sought a clear and well-defined universe of documents over a narrow time period.

60.     The Chamber has exhausted all available administrative remedies.

61.     The Chamber is entitled to an order compelling the Commission to conduct reasonable searches sufficient to locate responsive records and to promptly produce all responsive records.

62.     To the extent that the Commission seeks to invoke any of the applicable FOIA exemptions, the Chamber is entitled to an order compelling the Commission to produce sufficiently detailed indexes justifying withholding of responsive records.

## COUNT II
## Failure to Comply with FOIA
## (Past Zombie Votes Request)
## 5 U.S.C. §552

63.     The Chamber repeats and re-alleges the allegations in the foregoing paragraphs as if set forth fully herein.

64.     The Chamber properly submitted the Past Zombie Votes Request and sought the release of the records within the possession, custody, and control of the Commission.

65.     Under 5 U.S.C. §552(a)(3), the Commission was required to promptly produce all responsive records that are subject to disclosure under FOIA. Nevertheless, the Commission erroneously invoked Exemption 5 and Exemption 7(A).

66.     Exemption 5 applies only to "inter-agency or intra-agency" records and allows the agency to withhold records "that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5). Under Exemption 5, the Commission erroneously asserted the deliberative-process privilege and the work-product doctrine to withhold 492 pages of responsive, public records. Ex. B, at 19.

67.     Exemption 7(A) applies only to materials that were "compiled for law enforcement purposes but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. §552(b)(7)(A). The Commission asserted that it did "not have a duty to justify its request withholding decision on a document-by-document basis at this stage" and made no attempt to justify the withholding under Exemption 7(A). Ex. B, at 20.

68.     The Commission failed to produce and wrongfully withheld the records responsive to the Chamber's FOIA requests.

69.     The Chamber has exhausted all available administrative remedies.

70.     The Chamber is entitled to an order compelling the Commission to promptly produce all responsive records.

71.     To the extent that the Commission continues to invoke Exemption 5 and Exemption 7(A), the Chamber is entitled to an order compelling the Commission to produce sufficiently detailed indexes justifying withholding of responsive records.

**COUNT III**
**Failure to Comply with FOIA**
**(Illumina-GRAIL Request)**
**5 U.S.C. §552**

72.     The Chamber repeats and re-alleges the allegations in the foregoing paragraphs as if set forth fully herein.

73.     The Chamber properly submitted the Illumina-GRAIL Request and sought the release of the records within the possession, custody, and control of the Commission.

74.     Under 5 U.S.C. §552(a)(3), the Commission was required to promptly produce all responsive records that are subject to disclosure under FOIA. Nevertheless, the Commission erroneously invoked Exemption 5, claiming that the EC—a foreign jurisdiction—was somehow a consultant.

75.     Exemption 5 applies only to "inter-agency or intra-agency" records. 5 U.S.C. §552(b)(5). FOIA defines an "agency" as "each authority of the Government of the United States" and excludes foreign governments. 5 U.S.C. §551(1)(A). The notion that a foreign government can claim the exemptions created for inter- or intra-*U.S.*-agency records, especially in the context of two foreign antitrust authorities with distinct and separate legal roles (if any were permissible) in challenging this transaction, is unfounded and dubious given FOIA's text. *See, e.g.*, *Lucaj v. FBI*, 852 F.3d 541, 549 (6th Cir. 2017) (declining to apply the consultant corollary doctrine to foreign governments).

76.     The Commission failed to produce and wrongfully withheld the records responsive to the Chamber's FOIA requests.

77.     The Chamber has exhausted all available administrative remedies.

78.     The Chamber is entitled to an order compelling the Commission to promptly produce all responsive records.

79.     To the extent that the Commission continues to invoke Exemption 5, the Chamber is entitled to an order compelling the Commission to produce sufficiently detailed indexes justifying withholding of responsive records.

**COUNT IV**
**Failure to Comply with FOIA**
**(Khan's Prior Employment Request)**
**5 U.S.C. §552**

80.     The Chamber repeats and re-alleges the allegations in the foregoing paragraphs as if set forth fully herein.

81.     The Chamber properly submitted its Khan's Prior Employment Request and sought the release of the records within the possession, custody, and control of the Commission.

82.     Under 5 U.S.C. §552(a)(3), the Commission was required to conduct a search, make a timely determination as to the Commission's request, and promptly produce all responsive records that are subject to disclosure under FOIA. Nevertheless, the Commission has failed to make a determination within the required timeline.

83.     The Chamber has constructively exhausted administrative remedies under 5 U.S.C. §552(a)(6)(C)(i).

84.     The Chamber is entitled to an order compelling the Commission to conduct reasonable searches sufficient to locate responsive records and to promptly produce all responsive records.

85.     To the extent that the Commission seeks to invoke any of the applicable FOIA exemptions, the Chamber is entitled to an order compelling the Commission to produce sufficiently detailed indexes justifying withholding of responsive records.

### PRAYER FOR RELIEF

**WHEREFORE**, the Chamber ask this Court to enter judgment in its favor and to provide the following relief:

(1) An order compelling the Commission to expeditiously conduct a reasonable search for all records responsive to the Chamber's FOIA requests, to the extent that the Commission has not already conducted any searches, and to demonstrate that it employed search methods reasonably likely to lead to the discovery of responsive records;

(2) An order compelling the Commission to produce within twenty (20) days or such other times the Court deems proper all records responsive to the Chamber's FOIA requests that are subject to disclosure under FOIA and/or any indexes to the extent that the Commission seeks to invoke any FOIA exemptions;

(3) Attorney's fees and costs incurred in relation to this case, pursuant to 5 U.S.C. §552(a)(4)(E); and

(4) All other relief to which Plaintiffs are entitled that the Court deems just and proper.

Dated: July 14, 2022

Respectfully Submitted,

/s/ *Jeffrey M. Harris*

| | |
|---|---|
| Daryl Joseffer (D.C. Bar. No. 457185) | Jeffrey M. Harris (D.C. Bar No. 994058) |
| Jordan L. Von Bokern (D.C. Bar No. 1032962) | Frank H. Chang (D.C. Bar No. 1686578) |
| U.S. CHAMBER LITIGATION CENTER | CONSOVOY MCCARTHY PLLC |
| 1615 H Street, NW | 1600 Wilson Blvd., Suite 700 |
| Washington, DC 20062 | Arlington, VA 22209 |
| Telephone: +1.202.463.5337 | (703) 243-9423 |
| djoseffer@uschamber.com | jeff@consovoymccarthy.com |
| jvonbokern@uschamber.com | frank@consovoymccarthy.com |

*Counsel for Plaintiff Chamber of Commerce*
*of the United States of America*